IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| APPLIED MEDICAL RESOURCES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:07CV372–HEH |
| MARGRIET STEUER, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
(Granting-in-Part Defendant's Motion for Summary
Judgment and Dismissing Complaint Pursuant to 28 U.S.C. § 1367(c)(3))

This is a civil action seeking damages for defamatory statements allegedly made by a sales representative about her competitor. The matter is before the Court on Defendant's Motion for Summary Judgment. Both sides have filed extensive memoranda of law in support of their respective positions. Plaintiff has also filed objections to certain evidence offered by the defendant in support of her motion for summary judgment.[1] Because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process, the Court will dispense with oral argument. For the reasons discussed below, the defendant's motion is granted with respect to Count Three, alleging a violation of the Lanham Act. The balance of the Complaint, however, will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

---

[1] In deciding the issues presented, the Court did not rely on the evidence challenged by Plaintiff. Therefore, no formal ruling on Plaintiff's motions is necessary.

This case was originally filed in the Circuit Court for the County of Mecklenburg, Virginia. It was subsequently removed to this Court under 28 U.S.C. § 1441(b). The Complaint in its initial form alleges three counts: common law defamation, common law trade libel, and violations of the Lanham Act, 15 U.S.C. § 1125 *et seq.* Following removal, Plaintiff Applied Medical Resources Corporation ("Applied") voluntarily dismissed Count Two, which asserted a claim for common law trade libel. Plaintiff seeks both compensatory and punitive damages.

The events underlying this lawsuit occurred at the Community Memorial Hospital ("CMH") in South Hill, Virginia, a political subdivision of Mecklenburg County. At issue are six statements made by the defendant, Margriet Steuer, a sales representative for Ethicon Endo-Surgery, Inc. ("Ethicon"), a subsidiary of Johnson & Johnson. Ethicon is a direct competitor of the plaintiff in supplying products used in laparoscopic surgery. The alleged defamatory statements concerned a surgical device known as a "trocar." Trocars are cylindrical tubes which are placed through small incisions in a patient's abdomen and through which surgical instruments and a video camera are passed during minimally-invasive laparoscopic procedures. During the relevant time frame, Plaintiff and Ethicon were competing to supply trocars and related surgical materials to CMH. At that time, CMH had begun a clinical evaluation to determine whether it should convert to Applied's trocars from ones supplied by Ethicon. Plaintiff contends that the defamatory statements attributed to the defendant were uttered in response to frustration over the hospital's

decision to explore conversion to Plaintiff's trocars.

According to the Complaint, the defendant made six allegedly false factual statements about Plaintiff's products to personnel at CMH. First, Defendant allegedly advised hospital personnel that Applied's trocars have "caused tissue necrosis (death of body tissue)," or words to that effect. Next, Defendant stated that an Applied Separator® trocar "broke in a patient" at the hospital in Emporia, Virginia, or words to the same effect. The defendant is also accused of stating that an Applied representative was "not telling the truth about the seal in the Excel. It is not an Applied seal," or words to that effect. It is further alleged that Defendant said that Applied representatives are "not allowed to sell in the Veterans Administration hospitals," or words to that effect. Plaintiff asserts that the defendant informed CMH personnel that Mary Immaculate Hospital in Newport News, Virginia "went back to Ethicon trocars after the Applied trocar evaluation" or words to the same effect. Lastly, it is alleged that Defendant stated that Applied was "owned by an Iranian or Iraqi company," or words to the same effect. Plaintiff maintains that each of the statements are false and that they were uttered with the intent to cause harm to Applied's reputation and business relationships with this customer and prospective customers.

In support of her motion for summary judgment, the defendant advances an array of challenges to Plaintiff's claims. Initially, she contends that there is no competent admissible evidence that she uttered five of the six statements. Although there are

3

contextual differences, the defendant admits informing CMH personnel that an Applied trocar broke in a patient at the hospital in Emporia, Virginia. With respect to Plaintiff's contention that Defendant described Applied as owned by an Iranian or Iraqi company, Defendant recalls facetiously saying "for all you know, their [Applied's] trocars are made in Iran or Iraq." Defendant denies saying that Applied is owned by an Iranian or Iraqi company. As for the balance of the allegedly defamatory statements, Defendant denies they were ever made and argues that there is no admissible evidence to the contrary.

Aside from the comment that an Applied trocar broke in a patient at the Emporia hospital, which Defendant concedes making, the only evidence relied upon by Plaintiff to prove the other five allegedly defamatory comments is the testimony of two of its employees, Robert Major and Bruce Bradham. Robert Major is the Applied Laparoscopic Conversion Manager and Bruce Bradham is Applied's Territory Manager, overseeing the evaluation of Applied's products by CMH. Apparently, neither Mr. Major nor Mr. Bradham personally heard any of the statements attributed to the defendant. (Major Dep. pp. 98–100, 102–03, 107; Bradham Dep. pp. 50, 56.) Mr. Major contends that he learned of the statements from Tracy Moseley, CMH's Materials Manager. Mr. Major conveyed these comments to his superior at Applied, Chris Paulson, by e-mail. Mr. Bradham would apparently testify that he heard about Defendant's derogatory statements from two sources, Mr. Major and Darrell Powell, a CMH operating room nurse.

Tracy Moseley, however, specifically denies ever having heard Defendant say that

4

Applied's trocars have caused tissue necrosis; that the seal on Ethicon's Excel trocar is not an Applied seal or that Applied's sales representative misrepresented the nature of the seal; that Applied's sales representatives are not allowed to sell to VA hospitals; that Mary Immaculate Hospital in Newport News had converted to Applied trocars but later switched back to Ethicon; or that Applied is owned by an Iranian or Iraqi company. Furthermore, during her deposition, Ms. Moseley adamantly denied ever relating such comments to Mr. Major. (Moseley Dep. pp. 49–54, 119–120.) Similarly, Mr. Powell does not recall any such comments by the defendant. (Powell Dep. pp. 18–20.) Mr. Powell also denies informing Mr. Bradham that he had ever heard the defendant making the above-described comments. (Powell Dep. pp. 26–32.)

As to the five contested statements, the defendant argues that the testimony of neither Mr. Major nor Mr. Bradham is admissible to prove that the alleged defamatory statements were uttered. Plaintiff counters that while the statements may be hearsay, they are nonetheless admissible under Federal Rule of Evidence 807. This rule, known as the residual hearsay exception, allows a trial court to admit hearsay evidence not specifically covered by other recognized hearsay exceptions that is shown to have equivalent circumstantial guarantees of trustworthiness. In determining whether a hearsay statement has sufficient trappings of trustworthiness, Fed. R. Evid. 807 provides three vital prerequisites. First, the statement must be offered as evidence of a material fact. Second, the statement must be more probative of the point for which it is offered than any other

evidence which the proponent can procure through reasonable efforts. Lastly, the general purposes of the hearsay exceptions and the interests of justice must be best served by admission of the statement into evidence. *See United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995). The statements in question here fall far short of satisfying this standard.

The Court begins its analysis by observing that unlike the typical case where Fed. R. Evid. 807 is applied, cases involving speech content uniquely turn on the precise words and context of a statement. It is also important to note that the participants in the conversation at issue, the defendant, Ms. Moseley, and Mr. Powell, adamantly denied that the offending words were ever uttered. Ms. Moseley even goes further and denies ever having such a conversation with Mr. Major. Given that hollow predicate, it is difficult for this Court to conclude that the statements of Mr. Major are more probative than any other evidence which the proponent can procure through reasonable efforts. The Court is therefore not convinced that the interests of justice would be best served by the admission into evidence of the statements of Mr. Major. Obviously, this would preclude the admissibility of the statements of Mr. Bradham, who merely recites what he heard from Mr. Major and from Mr. Powell. Mr. Powell of course denies any such conversation with Mr. Bradham.[2]

---

[2]Plaintiff argues that the testimony of Mr. Major and Mr. Bradham, describing Defendant's comments to Ms. Moseley and Mr. Powell, is trustworthy because "neither Moseley nor Powell had reason to lie about Defendant." (Mem. in Opp. to Def.'s Mot. Summ. J. p. 23.) The trustworthiness at issue here extends beyond the original declarants, Ms. Moseley and Mr. Powell, to the final interlocutors, Mr. Major and Mr. Bradham. Mr. Major and Mr. Bradham are agents of the plaintiff and consequently have a legal interest in the outcome of this case. Again,

To overcome summary judgment, Plaintiff must offer countervailing evidence that is both admissible and based on personal knowledge. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). While Mr. Major and Mr. Bradham are undoubtedly respectable gentlemen, their hearsay statements fail to satisfy the requirements for admissibility under Fed. R. Evid. 807. Both rest on unstable evidentiary footings. *See Md. Highways Contractors Assoc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir.), *cert. denied*, 502 U.S. 939 (1991).

Focusing next on the sufficiency of the evidence forecast by Plaintiff to support the remaining counts of the Complaint, the Court will examine the Lanham Act claim first, since it forms the basis of the Court's jurisdiction under 28 U.S.C. § 1441(b). In Count Three, Plaintiff contends that Defendant's statements to CMH personnel violate the Lanham Act, warranting an award of treble damages. In its Complaint, Plaintiff alleges that "defendant's acts have caused actual confusion or deception among members of the purchasing public who are actual or prospective purchasers of Applied's products." (Compl. ¶ 39.) As both parties recognize, one of the seminal cases that defines the requirements for proof under the Lanhan Act is *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002). In *Fashion Boutique*, a case widely cited

---

the trustworthiness of Mr. Major and Mr. Bradham must be weighed in light of Ms. Moseley's and Mr. Powell's denial that the statements at issue were made.

7

by other circuits, the court staked out the boundaries of the Lanham Act's application.[3] A critical element in proving that disparaging statements offend the Lanham Act is proof that the comments constituted "commercial advertising or promotion." In *Fashion Boutique*, the court restated the four-part test for determining what representations qualify as "commercial advertising or promotion." The contested representations must be (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public. *Id.* at 56. Although this standard for "commercial advertising or promotion" has never been formally adopted by the Fourth Circuit, it has been uniformly embraced by district courts in this Circuit.

The most difficult hurdle for Plaintiff to surmount in this case is demonstrating that the defendant's comments constituted advertising and promotion designed to disseminate information to the public.

---

[3]Section 43A of the Lanham Act provides that:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or other person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

> [T]he touchstone of whether a defendant's actions may be considered "commercial advertising or promotion" under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action.

*Id.* at 57.

Whether such misrepresentations actually qualify as commercial speech depends upon the number of alleged contacts or misrepresentations made in relation to the total market. *Seven-Up Co. v. Coca-Cola Corp.*, 86 F.3d 1379, 1386 (5th Cir. 1996). If the total market is small, isolated contacts may be enough. *Cavalier Tel., LLC v. Verizon Va., Inc.*, 208 F. Supp. 2d 608, 618 (E.D. Va. 2002). The plaintiff, Applied Medical Resources Corporation, "sells its products to hospitals and surgery centers within the jurisdiction of this Court, in the Commonwealth of Virginia, throughout the nation, and in countries around the world." (Compl. ¶ 11.)

In this case, the relevant market for Plaintiff's trocars is at least nationwide, if not worldwide. Viewed from that dimension, the defendant's isolated comments to a few members of the CMH staff during a narrow time frame are comparatively insignificant. In light of the Court's exclusion of parts of the testimony of Mr. Major and Mr. Bradham pertaining to most of the alleged statements attributed to Defendant, only her comment

that an Applied trocar had broken off during a procedure at an Emporia hospital remains.[4] Considered in isolation, this statement is clearly inadequate to constitute advertising or promotion on the scale contemplated by the Lanham Act. Moreover, even if all six of the alleged statements of the defendant were deemed admissible, the result would be the same. The impact was simply too narrow and contained to implicate the Lanham Act.

Finding no *material* facts in dispute with respect to this count,[5] the Court is of the opinion that the defendant is entitled to judgment as a matter of law on the Lanham Act claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1980).

In the final analysis, the only remaining actionable claim is Count One alleging defamation. Its legal moorings are tightly tied to the common law of Virginia. Even if Plaintiff prevails on Count One, damages are *de minimus* at best. The defendant, who removed this case to federal court, is a Virginia resident. Most of the key witnesses appear to be affiliated with Community Memorial Hospital, which is located in Mecklenburg County, Virginia, approximately 80 miles from the federal courthouse. The case remains in this Court solely on the basis of this Court's discretionary supplemental jurisdiction. The remaining count implicates no federal interest. Whether the statements

---

[4] Defendant admits making an off-hand remark that "for all you know, their trocars are made in Iran or Iraq." However, this is not the statement alleged in the Complaint.

[5] "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 549 U.S. ___, ___, 127 S. Ct. 1769, 1776 (2007). To withstand summary judgment, a plaintiff must identify a *genuine* dispute of *material* fact. *See Abney v. Coe*, 493 F.3d 412, 420 (4th Cir. 2007).

at issue are defamatory is solely a question of state law. Since all federal claims have been extinguished, this Court will decline to exercise supplemental jurisdiction over the remaining state law claim. Therefore, pursuant to 18 U.S.C. § 1367(c)(3), this Court will dismiss Count One without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                                                                    /s/
                                                      Henry E. Hudson
                                                      United States District Judge

Date: Dec 21, 2007
Richmond, VA